RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 2 5 2020

JAMES N. HATTEN, Clerk
By_____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANDRA B. WILLIAMS | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| ENCORE CREDIT CORPORATION C/O | ) |
| SELECT PORTFOLIO SERVICING & | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| AS TRUSTEE, ON BEHALF THE | ) |
| HOLDERS OF THE HOME EQUITY | ) |
| ASSET TRUST 2006-5 HOME EQUITY | ) |
| PASS THROUGH CERTIFICATES, ` | ) |
| SERIES 2006-5; | ) |
| RUBIN LUBLIN, LLC. & | ) |
| BRET CHANESS,ESQ. | ) |
| | ) |
| DEFENDANTS | ) |

CIVIL ACTION FILE NO.:

# 1:20-CV-1297

## COMPLAINT

**COMES NOW** Sandra B. Williams, Plaintiff in the above captioned action, appearing Pro Se, and files this COMPLAINT against Defendants U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF THE HOLDERS OF THE HOME EQUITY ASSET TRUST 2006-5 HOME EQUITY PASS THROUGH CERTIFICATES, SERIES 2006-5, ENCORE CREDIT C/O SELECT PORTFOLIO SERVICING, LLC. Defendants admitted they agreed not to foreclose *because* the parties agreed to modify Plaintiff's loan. This is a clear case

1

of Dual tracking. 12 C.F.R. §1024.37 which is known as the Dual Tracking statute is a federal statute enacted to stop banks from promising homeowners they would not foreclose while the homeowner is engaged in a loan modification. However, even if a loan modification had not been pending, Plaintiff seeks the court's intervention to stop this admitted **practice of lying to homeowners, foreclosing and then refusing to vacate the foreclosure.** These are dangerous practices which flies in the face of public policy not to mention the constitutional implications should a practice like this be allowed to continue. Plaintiff brings to the court's attention that this is the ***second time*** the same Defendants and the same attorney, Rubin Lublin committed these practices. If it is discovered that Rubin Lublin advised their client to commit the admitted acts this constitutes grounds for intervention by the Georgia Bar including censure, sanctions and/or disbarment.

Additionally, The Securities Act of 1933 prohibits deceit, misrepresentations and *other* fraud in the sale of securities. Here Defendants violated the procedural safeguards put in place in order to maintain the integrity of a trust. The Securities Act of 1933 Item 1125 specifically states that a loan cannot be transferred into a trust after the closing the date or before the deposit date. Plaintiff submits this is an allegation of a procedural violation and not an issue of standing. Banks have routinely transferred loans in and out of trusts with blatant disregard of the

securities laws and procedural regulations. In support of her Complaint, Plaintiff submits as follows:

## I.     INTRODUCTION

This is an action to set aside a wrongful foreclosure which took place on August 16, 2019. Defendant Select Portfolio Servicing, Inc. wrongfully foreclosed after Plaintiff detrimentally relied on Defendants' ***admitted*** promise to forebear *pending completion of Plaintiff's mortgage modification.* (Exhibit A)

Plaintiff's complaint against Defendants involves several issues. In addition to the allegations of fraud, detrimental reliance and promissory estoppel, Plaintiff submits Defendants action constitutes a clear violation of the Dual Tracking Statute, 12 C.F.R. §1024.37.

As a result of Defendant's blatant lies Plaintiff could not exercise her right to seek a court ordered injunction, an automatic stay of foreclosure, by filing either a Chapter 7 or Chapter13 Bankruptcy. There is also an allegation that the Defendant Trust lacks standing to foreclose.

## II.     JURISDICTION

Plaintiff submits the Federal District Court has original jurisdiction pursuant to 28 U.S.C. § 1331: "The district courts shall have original **jurisdiction** of all civil actions arising under the Constitution, **laws**, or treaties of the United States."

This court also has jurisdiction over this matter pursuant to Art III, § 2 as there is complete diversity in this action and the amount in controversy exceeds $75,000.00 which is the statutory requirement pursuant to 28 U.S.C. § 1332.

### III.   PARTIES

1. Sandra B. Williams is the owner of property located at 2736 Lakeside Drive Southwest, Conyers GA 30094. This property is the subject of this litigation.

2. Encore Credit Corporation, a California Corporation its successors and assigns c/o Select Portfolio Servicing, LLC is a foreign, for profit, Corporation whose principal place of business address is 3217 S Decker Lake Drive, Compliance Department, Salt Lake City, UT, 84119 and can be served through their registered agent Corporation Service Company whose business address is 40 Technology Parkway South, Suite 300, Norcross, GA, 30092.

3. U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF THE HOLDERS OF THE HOME EQUITY ASSET TRUST 2006-5 HOME EQUITY PASS THROUGH CERTIFICATES, SERIES 2006-5, assignee of Encore Credit Corporation, a California Corporation.

4. Rubin Lublin, LLC., a Domestic Limited Liability Company, whose principal place of business is located at 3145 Avalon Ridge Place, Suite 100,

Peachtree Corners, GA, 30071. Rubin Lublin can be served at the same address through their registered agent Peter Lublin, Esq.

5. Bret Chaness, Esq. is an agent for Defendant Rubin Lublin and can be served at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA, 30071 through the registered agent Peter Lublin, Esq.

## IV.   STATEMENT OF FACTS

6. On or about March 24, 2006 Plaintiff executed a Security Deed recorded April 12, 2006, duly recorded in Rockdale County Superior Court, Deed Book 3833 at Page 333 et seq.

7. On or about March 12, 2013 the Mortgage Electronic Registration Systems, Inc., as nominee for Encore Credit Corporation, a California Corporation its successors and assigns c/o Select Portfolio Servicing, Inc. allegedly transferred Plaintiff's loan to U.S. Bank National Association, as Trustee on behalf of the Holders of the Home Equity Asset Trust 2006-5 Home Equity Pass Through Certificates, Series 2006-5 c/o Select Portfolio Servicing, Inc., duly  July 29, 2019, Plaintiff spoke with a representative of Defendant Select Portfolio Servicing, LLC., duly recorded in Rockdale County Superior Court, Deed Book 5331 at Page 177-178.

8. The Securities Act of 1933 is clear regarding procedural violations; a loan cannot be deposited into a trust after the closing date.

9. Plaintiff had been communicating with Defendants' representative, Select Portfolio concerning her loan and the parties had reached an agreement to move forward with a loan modification.

10. On or about July 29, 2019 Defendant communicated to Plaintiff on a recorded call that the foreclosure of the subject property, which had been scheduled to take place on August 6, 2019, would ***not*** take place.

11. On August 6, 2019, the foreclosure sale was completed despite Defendant, Select Portfolio Servicing's promise, not to do so.

12. Again, the reason for the agreed forbearance was that the parties agreed to modify Plaintiff's loan.

13. Plaintiff contacted Defendant Select Portfolio Servicing, who admitted, in a letter dated September 16, 2019 that their representative, *inadvertently* advised Plaintiff that the sale would not take place. (Exhibit A)

14. But, despite Defendant's admission of fault, Defendant refused to rescind the sale.

15. Defendant Rubin Lublin and Defendant Select Portfolio are no strangers to this scenario as an identical fact scenario occurred with the ***same Defendants*** in *Sparra v. Deutsche Bank Nat. Tr. Co.,* 336 Ga. App. 418, 785 S.E.2d 78 (2016).

16. In *Sparra,* the homeowner received a call from a Select Portfolio representative who told Sparra that his house would not be foreclosed on. After Sparra called Defendant Rubin Lublin, Defendant Rubin Lublin confirmed that the foreclosure sale had been rescinded. But despite reassurances from the Defendants, the foreclosure sale went forward.

17. This behavior by Banks and their legal representatives against homeowners is the reason legislation was enacted; the Federal Dual Tracking Statute; 12 §1024.37.

18. Plaintiff justifiably relied on Defendants representations.

19. These false representations constitute fraud and promissory estoppel.

20. Plaintiff believed Defendant and as such, did not exercise her legal right to file an emergency injunction; Bankruptcy which would have stopped the foreclosure sale.

21. Defendants seek to eject Plaintiff from her home.

### V.    FRAUD

22. "Under Georgia law ... the tort of fraud consists of five elements: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Next Century Commc'ns Corp. v. Ellis,* 318 F.3d

1023, 1027 (11th Cir.2003) (*Smith-Tyler v. Bank of Am., N.A.,* 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014)

23. Defendants falsely and admittedly represented to Plaintiff that they would not proceed with the foreclosure sale on August 19, 2019 as the Parties had agreed to modify the loan.

24. Defendant knew when they made that statement to Plaintiff she would refrain from acting.

25. "In order for a genuine issue of material fact to exist as to justifiable reliance, there must be some evidence that [the Plaintiff] exercised [her] duty of due diligence to ascertain the truth of the matter and to avoid damage." *Wender & Roberts, Inc. v. Wender,* 238 Ga. App. 355, 360, 518 S.E.2d 154 (1999).*Smith-Tyler v. Bank of Am., N.A.,* 992 F. Supp. 2d 1277, 1283 (N.D. Ga. 2014)

26. Plaintiff attaches hereto Exhibit A, a letter confirming the fact that Defendant admitted it communicated to Plaintiff that there would be no foreclosure.

27. Defendants knew or should have known that Plaintiff would do nothing in contemplation of modifying her loan.

28.Defendants knew or should have known that Plaintiff had the right, had she known they had no intention to modify her loan, to file Chapter 7 or 13 Bankruptcy.

29.Defendants knew or should have known that Plaintiff had the right, had she known they intended to proceed with the foreclosure that it could have been prevented with the filing of a Bankruptcy.

30.Defendants knew that telling Plaintiff the foreclosure had been stopped and then proceeding with it constitutes fraud.

31.Plaintiff detrimentally relied on Defendants allegations of forbearance as she believed they were in the best position to know whether or not the foreclosure would proceed or be stopped.

32.Defendants knew or should have known that Plaintiff would do everything in her power to defend title and possession of her home.

33.Plaintiff seeks damages for monies paid to defend this action.

34.Plaintiff moves this court to award punitive damages due to Defendants' fraud.

35.Plaintiff moves this court to award punitive damages for Defendants deliberate and blatant lie.

## VI.   DUAL TRACKING

36. Defendants are familiar with the Dual tracking statute. 12 C.F.R. §1024.41 governs a servicer's response to a loss mitigation application. 12 C.F.R.§1024.41(c) (3) (I) (D) (2) provides that where a borrower makes application and a judicial foreclosure has already been commenced, "the servicer cannot conduct a foreclosure sale before evaluating the borrower's complete application."

37. Plaintiff asked for a loan modification. Plaintiff's request was granted and Defendants agreed not to proceed with the foreclosure which had been scheduled for August 2019

38. Instead Defendants lied to Plaintiff and foreclosed in violation of 12 C.F.R. §1024.4

39. 12 C.F.R. §1024.4 governs a servicer's response to a loss mitigation application. A servicer is clearly prohibited from engaging in deceitful practices which includes lying.

40. 12 C.F.R. §1024.41(c) (3) (I) (D) (2) provides that where a borrower makes application and a judicial foreclosure has already been commenced, "*the servicer cannot conduct a foreclosure sale* especially after promising one wouldn't take place.

41. Additionally, before evaluating the borrower's complete application 12 C.F.R.§1024.41(g) prohibits a servicer from either holding a foreclosure sale or moving for a sale if a borrower makes a loan mitigation application within certain time constraints.

42. Here we have Defendants admission that they communicated to Plaintiff that they would not proceed with the foreclosure sale.

43. However in this case Defendants are in clear violation of the Federal Dual Tracking Statute which prohibits the servicer/lender from continuing with a sale.

44. Defendant failed to proceed with the loan modification and failed to issue a decision within 30 days of Plaintiff's having submitted a completed application.

45. Instead Defendant completed the foreclosure and even after admitting the ruse failed to rescind the sale.

46. Under section 102(a), 15 U.S.C. 1601(a)*, the purposes of TILA include assuring the meaningful disclosure of credit terms to enable consumers to compare more readily the various credit terms available and avoid the uninformed use of credit and to protect consumers against inaccurate and **unfair** credit billing practices.*

47. The Bureau's amendments to Regulation Z carry out TILA's purposes and such additional requirements, adjustments, and exceptions as, in the Bureau's judgment, are necessary and proper to carry out the purposes of TILA, prevent circumvention or evasion thereof, or to facilitate compliance therewith.

48. Plaintiff submits the loss mitigation process was not handled properly and discovery is needed to evaluate her claims.

49. Consumers and homeowners have rights that are protected by federal and state law.

50. Defendant failed to issue a written denial letter giving the specific reason for the denial.

51. Defendant failed to honor Plaintiff's right to a decision or the right to appeal a decision.

52. Defendant proceeded with a foreclosure sale in violation of the Amendments codified in 12 C.F.R.§1024.37 which states if the servicer has already made the first notice or filing, and a borrower timely submits a complete loss mitigation application: (i) the servicer must not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, even where the sale proceedings are conducted by a third party, unless one of the specified circumstances is met (i.e., the borrower's loss mitigation

application is properly denied, withdrawn, or the borrower fails to perform on a loss mitigation agreement); (ii) that absent one of the specified circumstances, conduct of the sale violates the rule; (iii) that the servicer must instruct foreclosure counsel promptly not to make any further dispositive motion, to avoid a ruling or order on a pending dispositive motion, *or to prevent conduct of a foreclosure sale*, unless one of the specified circumstances is met; and (iv) that the servicer is not relieved from its obligations by counsel's actions or inactions; (5) requires that servicers provide a written notice to a borrower within five days (excluding Saturdays, Sundays, or legal holidays) after they receive a complete loss mitigation application and requires that the notice: (i) indicate that the servicer has received a complete application.

53. Borrower has suffered actual damages caused by the violation and entitled to statutory damages.

## VII.   MOTION TO SET ASIDE, VACATE, RESCIND FORECLOSURE

54. Although "[a]n action to set aside a foreclosure sale may be brought at law or in equity.... [one] reason to avoid the overly broad application of this equitable principal [requiring tender of the amount of indebtedness] in actions to enjoin or set aside a foreclosure is that the statutory procedures which govern power of sale foreclosures are in derogation of common law

and are strictly construed.". *Rainey v. FMF Capital, LLC,* No. 1:11-CV-0364-CAP, 2012 WL 12287796, at \*5 (N.D. Ga. Mar. 30, 2012)

55. Plaintiff's basis for setting aside the sale is not necessarily based in equity— it is based, on the **defendants' failure to comply with O.C.G.A. §§ 44–14– 162, 162.2 and 12 C.F.R. §1024.37**. These statutes are strictly construed. *Rainey v. FMF Capital, LLC,* No. 1:11-CV-0364-CAP, 2012 WL 12287796, at \*5 (N.D. Ga. Mar. 30, 2012)

56. Plaintiff's failure to do equity is not a bar to setting aside the foreclosure as equity does not apply here. Defendants violated O.C.G.A. §§ 44–14–162 and 162.2.and were required to proceed with the loan modification as agreed.

57. If at the conclusion of said process and if the parties could reach a reasonable agreement, then and only then would Defendants be permitted to restart the notice of sale after they advised Plaintiff the sale had been stopped.

58. Instead Defendants circumvented all the state and federal laws put in place to protect the homeowner and moved forward with foreclosure.

59. Plaintiff is relying on the court's decision in *Rainey* where the court concluded "...the equitable maxim *does not apply here* to bar setting aside a foreclosure sale that would be null and void, *ab initio,* if the plaintiffs'

allegations are true. *Rainey v. FMF Capital, LLC,* No. 1:11-CV-0364-CAP, 2012 WL 12287796, at *5 (N.D. Ga. Mar. 30, 2012)

## VIII. PROMISSORY ESTOPPEL

60. To prevail on a promissory estoppel claim, plaintiff must show that (1) defendant made certain promises (2) defendant should have expected that plaintiff would rely on such promises, (3) the plaintiff did in fact rely on such promises to her detriment, and (4) injustice can be avoided by enforcement of the promise. *Sparra v. Deutsche Bank Nat. Tr. Co.,* 336 Ga. App. 418, 785 S.E.2d 78 (2016)

61. As Plaintiff indicated in her statement of facts in a case eerily similar to the case at bar, in 2016  Robert Sparra filed a Complaint in Gwinnett County Superior Court against Deutsche Bank National Trust Company, ***Select Portfolio Servicing, Inc., and Rubin Lubin, LLC***, (defendants) asserting claims for wrongful foreclosure, promissory estoppel, Fair Debt Collection Practices Act (FDCPA) violations, and declaratory relief, and seeking a temporary restraining order and/or preliminary and permanent injunction, punitive damages, and attorney fees. *Sparra v. Deutsche Bank Nat. Tr. Co.,* 336 Ga. App. 418, 418, 785 S.E.2d 78, 81 (2016)

62. Defendants misrepresented the status of the sale and Plaintiff relied on that promise to her detriment.

63. Plaintiff did absolutely nothing to defend her home from being foreclosed on because she had been told the foreclosure would not take place.

64. Plaintiff was under the impression the parties had reached an agreement concerning moving forward with a loan modification.

65. Plaintiff submits the sale should be vacated, set aside and rescinded as the Defendants are estopped from asserting they did not promise her the sale would not go forward.

66. Plaintiff has Defendants' recorded and written admission.

67. In light of the foregoing, the sale should be rescinded and declared void.

## IX.   VIOLATION OF SECURITIES ACT OF 1933 AND THE INTERNAL REVENUE CODE §§ 860A-G

64. A Transfer and Assignment of Deed to Secure Debt" into a trust is regulated by the Securities Laws of the United States. Pursuant to the SEC and IRS laws, a lender, or originator may create a SPE, special purpose entity, which is a sub-corporation that acquires and holds the loans and securitizes them by issuing certificates which represent the conversion of the mortgages into asset backed receivables which are given to the depositor to be placed into a mortgage pool; hence the mortgage is "assigned" into a trust; the securitization process. The Depositor is the only entity authorized by the prospectus, to transfer mortgage assets into a securitized trust.

65. The Pooling and Servicing Agreement, or the Trust Agreement regulates the trading of these mortgages which in turn is regulated by the Securities and Exchange Act of 1934 (17 CFR 240.12h-3) SEC Form 424(b) (5) is a prospectus form that must be filed in order to disclose information about the securities being offered. Form 8k, 10k, 15D, Form 424(b) (5), and the PSA are the components of a trust.

66. Each component of the trust is regulated by Regulation AB (§§ 229.1100 through 229.1125) which is the source of various disclosure items and requirements for "asset-backed securities" filings under the Securities Act of 1933 (15 U.S.C. 77a *et seq.*) (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. 78a *et seq.*).

67. In the instant case Regulation AB (§§ 229.1101 (C)(1)(IV) which regulates Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports under Sections 13 and 15(d) of the Securities Exchange Act of 1934 has been violated.

68. The Pooling and Servicing Agreement, or the Trust Agreement regulates the trading of these mortgages which in turn is regulated by the Securities and Exchange Act of 1934 (17 CFR 240.12h-3)

69. Sections 13, 15 and 15(d) of the Securities Exchange Act of 1934, is required by Rules 12g-4, 12h-3. No loan can be transferred into a trust before the deposit date or after the cut-off date.

70. The mortgage pool must contain the loans described therein.

71. The assignment is void and ineffective; a 2006 loan could not legally have been transferred in 2013 into a trust that closed in 2007 as this is *a procedural violation* of the aforementioned sections.

72. The Internal Revenue Code explains why a trust has to be compliant in order to remain a static vehicle. Internal Revenue Code (I.R.C.) §§860A-G (Real Estate Mortgage Investment Conduit ("REMIC") REMICs are required to be passive vehicles, meaning that mortgages *cannot* be transferred in and out of the trust once the closing date has occurred, unless the trust can meet very limited exceptions under the Internal Revenue Code I.R.C. § 860G. The 90 day requirement is imposed by the I.R.C. to ensure that the trust remains a static entity.

73. However, since the mortgage-backed securities trust is the controlling document, the Pooling & Servicing Agreement (PSA) requires that the trustee and servicer not do anything to jeopardize the tax-exempt status or violate any securities laws**.**

74. Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports under Sections 13 and 15(d) of the Securities Exchange Act of 1934 has been violated. The Pooling and Servicing Agreement, or the Trust Agreement regulates the trading of these mortgages which in turn is regulated by the Securities and Exchange Act of 1934 (17 CFR 240.12h-3)

75. Sections 13, 15 and 15(d) of the Securities Exchange Act of 1934, is required by Rules 12g-4, 12h-3. No loan can be transferred into a trust before the deposit date or after the cut-off date.

76. Internal Revenue Code (I.R.C.) §§860A-G (Real Estate Mortgage Investment Conduit ("REMIC") REMICs are required to be passive vehicles, meaning that mortgages *cannot* be transferred in and out of the trust once the closing date has occurred, unless the trust can meet very limited exceptions under the Internal Revenue Code I.R.C. § 860A-G.

77. Plaintiff submits that Defendants Assignment of mortgage into said Defendant trust also violated Internal Revenue Code I.R.C. § § 860A-G as Plaintiffs' 2006 loan could not have transferred in 2013.

78. Additionally under Rule 15Ga-1 "Notice of Termination of Duty to File Reports" if a securitizer terminates its reporting obligation pursuant to Rule 15Ga-1(c)(3) then they must provide the date of the last payment on the last

asset-backed security outstanding that was issued by or issued by an affiliate of the securitizer.

79. The courts have ruled this is an investor issue and that homeowners do not have standing. Plaintiff submits this is a procedural issue and the only issue before the court is not one of standing but whether or not the securities laws which govern the deposit of loans in and out of trusts have been violated.

80. Plaintiff submits Defendants' 2013 assignment, attached hereto as Exhibit B, is invalid and unenforceable and did not transfer the interest in Plaintiff's mortgage as said transfer violated securities laws; a 2006 loan cannot be transferred in 2013 into a trust that closed on January 16, 2007, seven (7) years before the purported transfer.

68. Plaintiff believes, the Defendant trust has no right or power to enforce the provisions of his 2006 Security Deed as the alleged transfer was not legally effective and violated securities laws.

69. Plaintiff submits Defendants' Assignment recorded 2013 (Exhibit B) did not transfer her loan into the Defendant trust.

70. Mortgage-backed securities are debt obligations that represent claims to the cash flows from pools of mortgage loans, most commonly on residential property. Loans are purchased from banks, mortgage companies, and other originators and then assembled into pools by a governmental, quasi-

governmental, or private entity," otherwise known as a depositor. (See

Mortgage Backed Securities, Sec & Exchange Commission (July 23, 2010)[1]

71. The depositor conveys the pooled loans to legal trusts set up for the purpose

of holding legal title to the loans, and, in exchange, receives certificates that

the depositor then sells to an underwriter, which the underwriter then sells to

investors; a process known as "securitization."  However, in the past several

years there has been an upsetting trend by the banks that are using

securitization to take homes through non-judicial foreclosure by first

assigning non-performing mortgages into trusts in violation of the rules of

securitization. A loan cannot be deposited into a trust before the deposit date

or after the closing date (SEC Form 15D).

68. The Securities Act of 1933 prohibits deceit, misrepresentations and *other*

fraud in the sale of securities.

69. The Securities Act of 1933 Item 1125 of this Regulation AB (Asset-level

information)  (§ 229.1125) Regulation  AB  (§§ 229.1101  (C)(1)(IV)

Incorporation by Reference (reproduced herein)

> (**iv**) If incorporated by reference into a prospectus or registration
> statement, the prospectus also states that all documents subsequently
> filed by such *third party*, or the entity that consolidates the third party,
> pursuant to section 13(a) or 15(d) of the Exchange Act prior to the

---

[1] https://www.sec.gov/answers/mortgagesecurities.htm.

termination of the offering also shall be deemed to be incorporated by reference into the prospectus."

Prohibits fraud in the *transfer* of securities, ie., alleging a security has been legally transferred when the assignment reflects the transfer took place before the deposit date or ***after the closing date*** thereby invalidating said transfer. It is void.

70. This lawsuit regards a procedural violation of securities and I.R.S laws by Defendants.

## X.   WRONGFUL FORECLOSURE

71. "In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (Punctuation and footnote omitted.) *Sparra v. Deutsche Bank Nat. Tr. Co.*, 336 Ga. App. 418, 420, 785 S.E.2d 78, 82 (2016)

72. Under Georgia law, an agent of the secured creditor may be liable in a wrongful foreclosure action; thus, for example, where a lawyer for the creditor conducts the foreclosure sale, the lawyer may be a proper defendant to sue. *LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289 (N.D. Ga. 2014)

73. Defendant owed Plaintiff a legal duty not to lie about the status of a requested modification.

74. Defendant owed Plaintiff a legal duty not to lie about the status of a pending foreclosure.

75. Defendant breached that duty by proceeding with the foreclosure despite reassurances the foreclosure would not proceed.

76. In light of this ruling, Plaintiff submits the Defendant law firm Rubin Lublin is now party to this lawsuit as the Consumer Finance Protection Bureau caused them to be made aware of the misrepresentation made by Select Portfolio but they refused to advise their client to rescind the sale thereby making them equally complicit and culpable.

77. Defendant admitted they told Plaintiff the sale would not proceed.

## XI.   SANCTIONS

78. Plaintiff followed the instructions of the Defendant servicer which was admittedly communicated in the manner that was proscribed. As such there is no excuse for this flagrant lie.

79. Plaintiff has been damaged in that she not only lost title to her home but she is now threatened with a demand of possession and ejectment.

80. This conduct by the servicer and the law firm with such vast resources is inexcusable.

81. "Court's inherent power is both broader and narrower than other means of imposing sanctions on attorney; it is broader in the sense that, while other sanction mechanisms only reach certain individuals or conduct, the inherent power extends to a full range of litigation abuses and must continue to exist to fill in the interstices, and it is narrower in the sense that a finding of bad faith is required to impose such sanctions.

## XII.  DAMAGES

82. Plaintiff submits that as a result of Defendants extreme and outrageous behavior, she is entitled to damages for her pain and suffering.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

    a. Set aside the foreclosure sale; and

    b. Find that Defendants violated Securities Law transfer procedure; and

    c. Find that Defendants violated I.R.S. Code; and

    d. Sanction the Defendants in light of their repeated bad acts (*Sparra); and*

    e. For such other and further relief as this court may deem proper.

Dated:     March 24, 2020

Sandra B. Williams
2736 Lakeside Drive Southwest
Conyers GA 30094

# EXHIBIT A



September 16, 2019

Sandra B. Williams
2736 Lakeside Dr. SW
Conyers, GA 30094

**Account Number:**      0009524976
**File Number:**         190829-4355377
**Property Address:**    2736 Lakeside Dr. SW
                         Conyers, GA 30094

Dear Ms. Williams,

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, received your inquiry, which was forwarded to us by the Consumer Financial Protection Bureau (CFPB) on August 29, 2019. In your inquiry, you raised questions regarding:

• Foreclosure

SPS is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate the obligation either has been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though the personal liability on the Note may be discharged or subject to an automatic stay, the terms of the Mortgage remain in effect. The owner of the Mortgage, as lien holder, continues to have a lien on the real property.

We have completed a full review of your inquiry and the account. Our response is below. A copy of this letter will be sent to the CFPB.

**Foreclosure**

In your inquiry, you requested the foreclosure be rescinded because of the information you obtained from our representative on July 29, 2019. We reviewed the call and found that the representative inadvertently advised you of incorrect information regarding the foreclosure sale. We regret any confusion this may have caused you. On August 6, 2019, the foreclosure sale was completed. We respectfully decline the request to rescind the foreclosure sale, as the sale is valid.

SPS has reviewed and responded to your inquiry as discussed above. We have provided all documentation relied upon in reaching our determination. If a document was not provided it is because it is privileged or proprietary.



# EXHIBIT B



Doc ID:  0068832970002 Type: ASGN
Recorded: 03/12/2013 at 11:18:25 AM
Fee Amt: $9.00 Page 1 of 2
Rockdale County Superior Court
Ruth A. Wilson Clerk
BK **5331** PG **177-178**

Return To:

1012-652624A
Aldridge Connors, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Atlanta, GA 30305

Recording Requested By: SELECT PORTFOLIO SERVICING, INC.
~~When Recorded Return To:~~ Bill Koch Select Portfolio Servicing, Inc. 3815 South West Temple, Salt Lake City, Ut
84115

---

## CORPORATE ASSIGNMENT OF MORTGAGE

Rockdale, Georgia   REFERENCE #: 413475480   "WILLIAMS"
INVESTOR #: 590
MERS #: 100180180003272539 VRU #: 1-888-679-6377

Prepared By:   BILL KOCH, SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE
CITY, UT 84115 1-800-258-8602

Assignment Prepared on: February 22nd, 2013.

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR ENCORE
CREDIT CORP. A CALIFORNIA CORPORATION ITS SUCCESSORS AND ASSIGNS at c/o SELECT PORTFOLIO
SERVICING, INC., 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115.
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HOME
EQUITY ASSET TRUST 2006-5HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-5 at C/O
SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115.

Executed By: SANDRA B. WILLIAMS, A SINGLE WOMAN To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR ENCORE CREDIT CORP. A CALIFORNIA CORPORATION
Date of Security Deed: 03/24/2006 Recorded: 04/12/2006 in Book/Reel/Liber: 3833 Page/Folio: 333 as Instrument
No.: 006536 in Rockdale County , State of Georgia.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with other evidence of indebtedness, said Mortgage having an original principal sum of $238,500.00 with
interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect
thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said
Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject
to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")
On  FEB 1 6 2013

By:
JEFF VANDERVOORT PRESIDENT

WITNESS

Mary Jean Thorpe

WITNESS

ANA NOVAKOVICH