IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SANDRA B. WILLIAMS, | : | CIVIL ACTION NO. |
| | : | 1:20-CV-1297-TCB-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SELECT PORTFOLIO SERVICING, | : | **FINAL        REPORT        AND** |
| *et al.* | : | **RECOMMENDATION   ON   A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff, a homeowner suing *pro se* to set aside a foreclosure, alleges that she was orally told on two occasions by Defendants' customer service representatives that an imminent foreclosure sale would be postponed. Yet, according to Plaintiff, the foreclosure occurred anyway, as originally scheduled. Plaintiff alleges that she was misled by Defendants' oral statements into not "stopping" the foreclosure by filing for bankruptcy in the days prior to the foreclosure. Plaintiff seeks to overturn the foreclosure on this basis.

The Court previously explained in substantial detail why Plaintiff's Complaint failed to provide sufficient factual detail to state a claim. *See* R&R [22]. But the Court allowed Plaintiff another opportunity to amend her complaint to resolve the deficiencies. *See* R&R [22]; Order [25]. Plaintiff has since filed an Amended Complaint [26], also *pro se*. As explained by Defendants' second Motion to Dismiss for Failure to State a Claim [27], however, the amendments do not resolve the

deficiencies previously identified by the Court, and the Amended Complaint still fails to state a claim. Further, Plaintiff has not responded to Defendant's Motion to Dismiss, thus indicating that the motion is unopposed. *See* LR 7.1(B), NDGa. Thus, the Court **RECOMMENDS** that Defendants' motion [27] be **GRANTED** and that the Amended Complaint be **DISMISSED**.

## I.    BACKGROUND

The original Complaint alleged that Plaintiff originally executed a Security Deed in April 2006. Compl. [5] at ¶ 6. At some unstated date, a foreclosure was scheduled for August 6, 2019. *Id.* at ¶ 10. Plaintiff does not allege the details of any loan modification application, but she states that at some point based on verbal discussions with a representative of SPS "the parties had reached an agreement to move forward with a loan modification." *Id.* at ¶ 9. As a result, "on or about July 29, 2019 Defendant communicated to Plaintiff on a recorded call that the foreclosure of the subject property, which had been scheduled to take place on August 6, 2019, would ***not*** take place." *Id.* at ¶ 10 (emphasis added). Nevertheless, the foreclosure went forward as originally scheduled on August 6. *Id.* at ¶ 11. Plaintiff contacted Defendant SPS, which then admitted, in a letter dated September 16, 2019, that its representative had "inadvertently" informed Plaintiff that the foreclosure would not occur on August 6. *Id.* at ¶ 13, Exh. A. Despite the erroneous information, Defendant refused to rescind the sale. Plaintiff states that she "justifiably relied" on the promise

that no foreclosure would occur on August 6, by refraining from "fil[ing] an emergency injunction; Bankruptcy which would have stopped the foreclosure sale." *Id.* at ¶ 20.

As explained above, the undersigned issued a Report and Recommendation explaining in detail why these factual allegations did not adequately state a claim under Plaintiff's various legal theories, including Wrongful Foreclosure, Promissory Estoppel, and under the Real Estate Settlement Procedures Act. *See* R&R [22]. The undersigned recommended that the Complaint be dismissed but with leave to replead most of the claims. *Id.* The District Court adopted the undersigned's recommendation, and Plaintiff thereby filed the Amended Complaint.

The Amended Complaint alleges substantially the same factual matter as the original Complaint. The small amount of additional detail includes the name of the customer service representative that told Plaintiff the foreclosure would not take place on July 29, 2019 ("Joseph"); a more detailed statement of the information provided by "Joseph" ("Joseph advised Plaintiff that 'when an account is under dispute status, a foreclosure would not take place.'"); and a description of the discussion between Plaintiff and "Joseph" about whether this statement could be furnished in writing ("Plaintiff asked Joseph for a letter in writing indicating the foreclosure would not take place but Joseph told Plaintiff he 'could not issue anything.'"). Am. Compl. [26] at ¶ 8. The Amended Complaint also alleges that

Plaintiff, despite this assurance, filed a "civil lawsuit" against "Defendants" on July 31, 2019. *Id.* at ¶ 9. The Amended Complaint further alleges a second conversation, and second oral assurance by another customer service representative ("Selina") at approximately 10:00 pm on August 5, 2019, which was the night before the scheduled foreclosure. *Id.* at ¶ 12.

Plaintiff again alleges that the foreclosure occurred as originally scheduled the following day, on August 6, 2019, despite the oral assurances from "Joseph" and "Selina" that the foreclosure would be delayed. Plaintiff alleges that she "relied to her detriment" on the assurances from "Joseph" and "Selina" because, although Plaintiff alleges that she filed another lawsuit or other legal pleadings against Defendant during this time, she refrained from filing for bankruptcy, "which would have stopped the foreclosure sale." *Id.* at ¶ 24.

The Amended Complaint asserts substantive claims for Promissory Estoppel, Fraud, Wrongful Foreclosure, and Negligent Misrepresentation. Plaintiff requests injunctive relief to set aside the August 6 foreclosure and monetary damages "to offset any arrearages, including interest together with a reasonable amount in excess of those sums." *Id.* at 24.

## II.   DISCUSSION

### A.   *Standards on a Motion to Dismiss*

The Court refers to and incorporates the legal standards set forth in its earlier Report and Recommendation [22], both as to the general standards that apply to a Rule 12(b)(6) motion to dismiss, and for the substantive law and elements of the individuals claims.

### B.   *Plaintiff's Claims*

#### 1.   Promissory Estoppel

The Promissory Estoppel claim still fails to state any claim for the same reasons identified in the Court's prior Report and Recommendation.

As an initial matter, in Georgia, promises relating to interests in land are covered by the Statute of Frauds, and therefore must be in writing to be enforceable. O.C.G.A. § 13-5-30(a)(4); *E. Piedmont 120 Assocs., L.P. v. Sheppard*, 434 S.E.2d 101, 102 (Ga. Ct. App. 1993). As the Court previously explained, "[p]romises that do not conform to the statute of frauds . . . will often be equally unenforceable under a promissory estoppel theory," because it is usually unreasonable to rely on such an unenforceable oral statement. *Johnson v. University Health Services, Inc.*, 161 F.3d 1334, 1340 (11th Cir. 1998); *see also R.T. Patterson Funeral Home, Inc. v. Head*, 451 S.E.2d 812, 817 (Ga. Ct. App. 1994) (noting the "general rule that there is no

justifiable reliance upon future promises which must be in writing to be enforceable").

The additional allegations in the Amended Complaint do not assist in demonstrating that it was reasonable to rely on these allegedly oral and unenforceable promises. To the contrary, the additional facts if anything show that Plaintiff knew not to rely on such oral statements. First, she expressly asked "Joseph" for the July 29 assurance to be made in writing, and he indicated that he could not supply anything in writing. Am. Compl. [26] at ¶ 8. Second, Plaintiff states that she filed another lawsuit, or at least motions or pleadings in another case, on July 31 despite have received the assurance from Joseph two days earlier. *Id.* at ¶ 9. The additional allegations as to the conversation with "Selina" do not add anything material to Plaintiff's showing of reasonable reliance.[1]

Further, the Amended Complaint does nothing to cure the conclusory and speculative nature of the allegations set forth in the original Complaint as to the

---

[1] Plaintiff's Amended Complaint continues to refer to the alleged promises to forebear on foreclosure as having been made "in writing," because Defendant allegedly sent her a letter several weeks later acknowledging that a customer service representative had "inadvertently" and erroneously told her that the foreclosure would be delayed. This subsequent written statement acknowledging but retracting the alleged earlier statements was not in itself a promise. And Plaintiff could not have relied on this written statement in refraining from filing for bankruptcy prior to August 6, because this written statement was not received until several weeks later.

supposed effect of a hypothetical bankruptcy filing. As the Court explained in the

previous Report and Recommendation:

> . . . Plaintiff only supplies vague and conclusory facts as to how she
> relied to her detriment on any oral promise by SPS representatives that
> the August 6, 2019 foreclosure would not happen. She states that she
> would have otherwise "filed an emergency injunction; Bankruptcy
> which would have stopped the foreclosure sale." [Compl. [5] at ¶ 20.]
> This statement lacks any allegations of fact to explain what specific
> legal action Plaintiff would have taken in Bankruptcy Court or
> otherwise, and any facts to plausibly suggest that any such legal action
> was being planned or was in progress and would have been initiated in
> the few days that remained before the August 6 sale. Also, the
> Complaint lacks allegations of fact specific enough to plausibly suggest
> that any such planned legal action would have been anything other than
> immaterial or frivolous. Said another way, the Court is left without any
> allegations to conclude that Plaintiff would have filed any particular
> legal action that could have legitimately and successfully avoided
> foreclosure. Plaintiff's own opinion that [any such action] could have
> "stopped the foreclosure sale" is therefore entirely conclusory and
> speculative.

R&R [22] at 13.

The Court's analysis set forth above continues to apply equally to the

materially similar allegations repeated in the Amended Complaint. Plaintiff

continues to fail to plead facts to suggest that any bankruptcy action was being

planned or in progress and would have been initiated between the July 29 call with

Joseph and the August 6 foreclosure.[2] Plaintiff alleges no facts to show that

---

[2] Plainly, nothing of substance could have been achieved in between the second call
with Selina, at 10 p.m. on August 5 and the foreclosure scheduled for the next
morning, or at least Plaintiff alleges no additional facts to explained what legal

"Joseph" was aware of any threat of bankruptcy and made these statements to induce Plaintiff to forebear from filing.

And while a bankruptcy filing may have temporarily stayed foreclosure, Plaintiff alleges no facts to suggest that she had any good faith basis to obtain substantive foreclosure relief from a bankruptcy court. "There are a legion of cases which hold that 'filing a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code.'" *In re Selinsky¸* 365 B.R. 260, 262 (Bankr. S.D. Fla. 2007) (quoting *In re Felberman*, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995) (gathering authority)). Plaintiff alleges no facts to suggest that she had the ability or intent to reorganize or any other facts to suggest a chance of avoiding foreclosure in bankruptcy court.

Thus, Plaintiff's suggestion that she would have filed for bankruptcy but for these calls and somehow would have thereby successfully "stopped" the foreclosure through such an unexplained, hypothetical, and (without further factual allegations) apparently baseless bankruptcy case, remains conclusory and speculative. The claim is due for dismissal on the same bases as explained in the original Report and Recommendation.

---

actions she was otherwise about to take in the middle of the night that would have made a difference.

2.      Wrongful Foreclosure

As the original Report and Recommendation stated, "[n]umerous cases have also made clear that violating a non-binding oral promise to delay an otherwise properly noticed and conducted foreclosure, does not necessarily constitute Wrongful Foreclosure." R&R [22] at 10. The Court further explained:

> In *Mills*, for example, after providing formal statutory notice of a foreclosure, a creditor allegedly told the homeowner that the home would not be foreclosed after all. *See* 2012 WL 4086508, at *6–8. The creditor then broke this alleged promise and foreclosed anyway. Nevertheless, the Court found this promise to be legally unenforceable, and specifically denied the Wrongful Foreclosure claim where the statutorily-required notice had otherwise been given. *Id.*; *see also Ford v. CitiMortgage, Inc.*, No. 1:12-cv-3808-RWS, 2013 WL 4955875, at *3 (N.D. Ga. Sept. 12, 2013) ("Plaintiffs' claim for wrongful foreclosure based on an alleged oral agreement to postpone foreclosure proceedings fails as a matter of law."); *Bankston v. Deutsche Bank Nat'l Tr. Co.*, No. 1:14-CV-1687-ELR-JCF, 2016 WL 4150753, at *9 (N.D. Ga. Jan. 20, 2016), *report & rec. adopted by* 2016 WL 4203844 (N.D. Ga. Mar. 14, 2016) (broken unenforceable promise to delay foreclosure while loan modification was pending would not sustain claim for Wrongful Foreclosure); *Morrall v. CitiMortgage, Inc.*, No. CV 114-086, 2015 WL 800173, at *4, (S.D. Ga. Feb. 25, 2015) (same).

*Id.* at 10–11. The Court described other cases that permitted a claim based on additional, more specific factual theories, and expressly permitted Plaintiff to allege more facts to support her claim. But the allegations in the Amended Complaint remain the same in all material respects.

Thus, in the end, Plaintiff alleges no facts other than those found to be deficient in *Mills* and the other case cited above. Plaintiff continues to fail to state a claim.[3]

        3.      Fraud

For all the same reasons explained above, and in the original Report and Recommendation, Plaintiff also fails to meet the even higher pleading obligations applicable to show fraud. None of Plaintiff's additional allegations resolve the fundamental deficiencies in this claim identified earlier.[4]

_____

[3] While moot in light of the above recommendations, the Court additionally finds that Plaintiff has also continued to fail to state any facts justifying any claim against foreclosure counsel, who are not alleged to have been involved in or aware of the statements from "Joseph" or "Selina." The naming of foreclosure counsel as defendants here is particularly unsupported and those parties would be entitled to dismissal even if the statements from "Joseph" or "Selina" could otherwise be the basis of a claim against the servicer or creditor.

[4] Because Plaintiff fails to state any claim, it is unnecessary for the Court to consider the additional question as to whether Plaintiff should be ordered to tender the amount of her mortgage arrearage, or some other amount, to seek injunctive relief.

## III.   RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Defendants' motion [27] be **GRANTED** and that the Amended Complaint be **DISMISSED**.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 28th day of January, 2021.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE